**Corrected**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1048V
UNPUBLISHED

| | |
|---|---|
| LAURETTA ALLNER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: September 9, 2022<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Felicia Langel*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On July 19, 2019, Lauretta Allner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 13, 2017. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the total amount of **$60,000.00, representing Petitioner's actual pain and suffering, as well as $213.38 for Petitioner's unreimbursed expenses.**

## I.     Relevant Procedural History

As noted above, this case was initiated in July 2019. On March 15, 2021, after attempting to resolve this case informally, Petitioner filed a status report stating that the parties had reached an impasse. ECF No. 33. I thereafter set deadlines for the filing of Respondent's Rule 4(c) Report, plus briefs addressing both Petitioner's entitlement to compensation and an appropriate award of compensation (if Petitioner established entitlement). ECF Nos. 34, 36, 41; Scheduling Order (non-PDF) issued February 1, 2022.

On May 3, 2021, Respondent filed his Rule 4(c) Report recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 35. On July 6, 2021, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages, arguing that she had established entitlement to compensation for her SIRVA injury, and requesting an award of $75,000.00 for her pain and suffering (as well as $746.78 for unreimbursed medical expenses). ECF No. 37.  Respondent reacted with his own brief on August 23, 2022, again recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 38. Petitioner filed a Reply on September 3, 2021. ECF No. 39. Respondent later filed a brief addressing damages on February 18, 2022, arguing that in the event entitlement to compensation was found, Petitioner should be awarded the lesser amount of $55,000.00 for actual pain and suffering, and no compensation for her unreimbursed expenses, which Respondent argued were not substantiated. ECF No. 40.

On May 16, 2022, I ordered Petitioner to file additional evidence in support of her request for unreimbursed expenses. Petitioner did so, reducing this damages component to $213.38. ECF No. 46. Respondent later accepted this sum as properly substantiated (again assuming entitlement were first found in Petitioner's favor). ECF No. 47.

In July of this year, I proposed this case be set for an expedited "Motions Day" hearing on August 26, 2022, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 48. The parties agreed. ECF No. 50. The Motions Day hearing took place on August 26, 2022. Minute Entry dated August 26, 2022.[3] I orally ruled on Petitioner's entitlement to compensation,

---

[3] Patrick Kelly appeared on behalf of Petitioner, and Felicia Langel appeared on behalf of Respondent. The transcript of the August 26, 2022 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

and after hearing argument made an oral damages determination as well. This Decision memorializes those findings/determinations.

## II.     Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is whether Petitioner's first post-vaccination symptom or manifestation of onset (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(XIV)(B) (seasonal influenza vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI);

4

ECF No. 38 at 8-9. Based upon a review of the entire record, and for the reasons set forth below, I find that it more likely than not was.

Petitioner received a flu vaccination in her left deltoid on October 13, 2017. Ex. 1; Ex. 15 at 1-2. Approximately two months later, on December 14, 2017, she was seen by her primary care provider ("PCP") for acute cystitis without hematuria, or a urinary tract infection ("UTI"). Ex. 2 at 22. The record does not contain any indication that Petitioner was at this time suffering shoulder pain.

Petitioner was seen again by her PCP the following month - on January 9, 2018. Ex. 2 at 17. She now reported that she "had a flu shot in in October 2017 to her upper left top of her shoulder" and that she was "[w]orried they hit a nerve in her arm." *Id.* Petitioner's PCP assessed her with "Left Upper Arm Pain. . . . Story: since flu shot at Walmart this fall." Ex. 2 at 20. Petitioner's subsequent treatment records continue to describe the onset of her shoulder pain as occurring close-in-time to her vaccination. Ex. 5 at 19 (January 18, 2018 Orthopedic Evaluation: "no history of any shoulder problems until early October 2017 [when] she underwent a flu shot and has had issues with regard to her shoulder since that time"); Ex. 5 at 17 (January 18, 2018 Physical Therapy Evaluation: "Mechanism of Injury: The patient reports that she got a flu shot in October 2017. The patient reports since that time she has had increasing left shoulder pain").

Respondent asserts that Petitioner did not report her shoulder injury for nearly three months after her vaccination, at which time she did not affirmatively specify an onset for her pain. ECF No. 38 at 8. Additionally, Respondent argues that she failed to report her shoulder pain at an earlier visit with her primary care physician on December 14, 2017, and since she ultimately *did* report her shoulder pain to her PCP, it is unlikely that she would have failed to do so earlier when given the chance to discuss the matter. *Id.*

I acknowledge that Petitioner's first relevant medical record post-vaccination fails to mention her shoulder pain. But that visit was for an acute UTI that benefits from timely medical treatment and for which Petitioner underwent a uranalysis and was prescribed antibiotics.[5] At that time, Petitioner did not undergo a complete physical examination, and it is also understandable that she would not have raised concerns in regard to her shoulder pain when she was obtaining treatment for a separate and acute illness.

Additionally, although Petitioner did not seek treatment for her shoulder pain for almost three months, it is not unusual in my experience adjudicating SIRVA claims that petitioners delay treatment, hoping their shoulder pain and/or soreness will abate.

---

[5] I note that I inadvertently indicated at the Motions Day hearing that this visit was with a specialist, rather it was regarding an acute issue which – like issues treated by specialists – typically is the focus of patient, and the provider, at the visit.

Moreover, once Petitioner did report her shoulder pain to her PCP she consistently associated the onset of her pain with her flu vaccination. According, I find that the medical records cited above (Ex. 2 at 17, Ex. 5 at 17, 19) as supported by Petitioner's sworn affidavit, and that of her husband, (Exs. 7, 9) preponderately support the conclusion that the onset of her shoulder pain likely began within 48 hours of her October 13, 2017 flu vaccination. My finding herein is consistent with the intent of the Act -- that awards are to be "made to vaccine-injured persons quickly, easily, and with certainty and generosity.'" H.R. Rep. No. 99–908, 3, 99th Cong., 2d Sess. 18, *reprinted in* 1986 U.S.C.C.A.N. 6344.

I credit Respondent's arguments about the vagueness of certain records pertaining to onset in this case, but note that the Program's evidentiary standards are nevertheless satisfied under the circumstances. As I have previously observed, "the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset *occurs* in the relevant timeframe." *Niemi v. Sec'y of Health & Hum. Servs.*, No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Aug. 10, 2021) (citing Section 13) (emphasis in original). Neither does the Act require that the medical records document an exact date that the onset of a petitioner's shoulder pain began. A special master may thus find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2).

Accordingly, this element of the claim has been met.

### C. Other Requirements for Entitlement

Based on the above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.,* receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed in this claim.[6] I therefore find that Petitioner is entitled to compensation in this case.

---

[6] In his Rule 4(c) Report, and in his Response to Petitioner's Motion for a Ruling on the Record, Respondent also contended that Petitioner failed to establish that her vaccine injury persisted for six months and thus had not met the Vaccine Act's severity requirement (Section 11(c)(1)(D)(i)). ECF No. 35 at 7; ECF No. 38 at 12-13. However, Respondent did not pursue this objection at the Motions Day hearing, representing instead that his primary contention regarding the claim related to onset. Notwithstanding the gap in treatment during the first year of Petitioner's injury (following her discharge from physical therapy), I do specifically find that Petitioner has established she suffered the seqeula of her injury for more than six months. *E.g.,* Ex. 2 at 5 (PCP visit a little over year after her vaccination at which Petitioner reported she "has had left arm pain and has been hurting since October 13, 2017."); Ex. 3 at 7 (orthopedic visit from

6

### D. Damages

#### a. The Parties' Arguments

Citing eleven prior damages determinations, with awards ranging from $65,000.00 to $90,000.00, Petitioner requests $75,000.00 in actual pain and suffering. ECF No. 37 at 34-37.[7] She asserts that her course of treatment (including five cortisone injections, two MRI exams, and eight physical therapy sessions) is comparable to the aforementioned non-surgical SIRVA cases. ECF No. 37 at 32-37.

Respondent, by contrast, proposes the lesser award of $55,000.00 for Petitioner's pain and suffering. ECF No. 40 at 8. He argues that the significant gaps in Petitioner's treatment records "support a finding that she was relatively pain-free throughout her course" of injury. *Id*. at 10. Respondent cites to one case in particular – *Norton v. Sec'y of Health & Hum. Servs.*, No. 19-1432V, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $55,000.00 for actual pain and suffering) - as most comparable to Petitioner's claim.  ECF No. 40 at 11-12.

#### b. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III and IV of *Friberg v. Sec'y of Health & Hum. Servs.,* No. 19-1727V, 2022 WL 3152827 (Fed. Cl. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

---

almost 13 months post-vaccination noting Petitioner's "history of problems with the left shoulder that began immediately after a October 31 [sic], 2017 flu shot").

[7] Petitioner also cited an additional three cases at the August 26, 2022 hearing. While I appreciate that those cases were decisions more recently issued than those cited in Petitioner's Brief, and they have some bearing on resolution, the failure to include them in prior briefing (to the extent that was possible, given publication dates) makes it difficult to give them extra weight in my determination.

[8] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed.

### c. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on August 26, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on August 26, 2022 (which is fully adopted herein), **I find that $60,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering (in addition to the agreed upon $213.38 in unreimbursed expenses).**

One factor predominantly relevant to my determination is Petitioner's treatment delay. Petitioner alleges that her pain was immediately severe, but she did not obtain treatment until January 9, 2018, nearly three months after October 13, 2017 vaccination. While I find that such a delay is reasonable (and thus not a reason to deny entitlement), the delay supports the conclusion that Petitioner's shoulder pain was not so severe as to necessitate urgent treatment immediately after her vaccination.[9]

More evidence of the somewhat mild nature of the injury is found in Petitioner's subsequent treatment course. Thereafter, Petitioner underwent intermittent and

---

Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[9] I do take into consideration that Petitioner reported her shoulder pain more immediately to her pharmacist, although he did not contemporaneously document that report. He nevertheless acknowledged that she returned to the pharmacy approximately two weeks after her vaccination complaining of continued pain in her left arm. Ex. 6 at 1. However, a report of pain to a pharmacist is not indicative of the same level of urgency (and thus severity) as an immediate visit to an urgent care clinic or emergency room.

conservative treatment for her relatively mild shoulder injury for over four years, including: eight physical therapy sessions,[10] five steroid injections,[11] and two MRI scans.[12]

Notably, there are multiple, lengthy gaps in Petitioner's treatment, suggesting both that her pain was not so severe as to require frequent medical attention, and that the medical care she received for her shoulder (most often steroid injections) was helpful in managing her shoulder pain. I note that Petitioner appears to have received no formal *treatment* for her shoulder injury during the following time periods: 1) approximately eight months between her discharge from physical therapy in March 2018 (Ex. 5 at 3-4) and her resumption of treatment in October 2018 (Ex. 2 at 5); 2) approximately ten months between her fourth steroid injection on February 19, 2020 (Ex. 12 at 4-6) and her fourth steroid injection on January 5, 2021 (Ex. 13 at 6); and 3) approximately 15 months between her fourth and her fifth cortisone injection received on April 1, 2022 ( Ex. 14 at 5). While Petitioner's injury has unquestionably persisted for many years, it is notable that she required minimal treatment or medical intervention for significant periods of time outside of cortisone injections – to which she appears to respond very well.

The fact that Petitioner could cope with her injury during these periods of time counsels in favor of a lower pain and suffering award. Additionally, I note that it appears Petitioner's shoulder pain was not entirely due to her SIRVA, but that she also suffered osteoarthritis. Ex. 14 at 5. Finally, I note that Petitioner's MRI reports are not indicative of severe SIRVA findings.

In making my determination, I have fully considered Petitioner's and her husband's sworn affidavits. However, I do not find any unique personal factors that would independently support a larger award (such as a pregnancy at the time of her injury). *See Desrosiers v. Sec'y of Health & Hum. Servs.*, No. 16-0224V, 2017 WL 5507804, (Fed. Cl. Sept. 19, 2017). The parties' comparable case citations were also reasonable, but not fully useful in helping me to calculate pain and suffering. I find that the best comparable to be my decision in *Clendaniel*, which involved a petitioner who received two steroid

---

[10] Petitioner engaged eight physical therapy sessions between January 18, 2018 and March 7, 2018. Ex. 5 at 3-4.

[11] Petitioner received five steroid injections on the following dates: November 9, 2018 (Ex. 3 at 5); May 14, 2019 (Ex. 11 at 8); February 19, 2020 (Ex. 12 at 6); January 5, 2021 (Ex. 13 at 7); and April 22, 2022 (Ex. 14 at 3).

[12] Petitioner's first MRI scan occurred on November 16, 2018. The MRI Impression indicated: "Question artifact versus subtle tear/thinning of the infraspinatus as noted." Ex. 3 at 12. It was also noted to be a "diagnostically limited study." *Id.* Petitioner's second MRI scan occurred on February 4, 2020 with the following impression recorded: "1. I do not see evidence of a full-thickness or rotator cuff tear. Free fluid in the subacromial and subdeltoid bursa regions may be simply associated with the contrast injection. . . . 2. No specific labral tear noted." Ex. 12 at 13.

injections and two arthrocentesis procedures to treat her SIRVA, coupled with relatively insignificant MRI findings. *Clendaniel v. Sec'y of Health & Hum. Servs.*, No. 20-213V, 2021 WL 4258775, at *8 (Fed. Cl. Aug. 18, 2021). While there are distinguishing factors between the instant case and *Clendaniel*, I find that it represents an appropriate non-surgical case comparable to Petitioner's circumstances. Petitioner has, however, demonstrated that her injury was both more severe and of a longer duration than the injury sustained by the petitioner in *Norton* case offered by Respondent.

### E. Conclusion

In light of all of the above, the I award **Petitioner a lump sum payment of $60,213.38 (representing $60,000.00 actual pain and suffering, plus $213.38 in unreimbursed expenses) in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.